# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| LARRY WISENBAKER, et al., | 3:03-CV-0500-LRH (VPC) |
| Plaintiffs, | |
| vs. | **REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE** |
| CRAIG FARWELL, et al., | |
| Defendants. | |

This Report and Recommendation is made to the Honorable Larry R. Hicks, United States District Judge. The action was referred to the Undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4. Before the court is plaintiff's motion to enforce settlement agreement (#80), which defendants opposed (#81). Plaintiff replied (#86) and the court set the matter for an evidentiary hearing, which was held April 1, 2010 (#105). As more fully set forth below, the court recommends that plaintiff's motion be denied.

## I.    Procedural History

Plaintiff, Larry Wisenbaker, is an inmate in the custody of the Nevada Department of Corrections. At the time giving rise to this action, plaintiff was housed at Lovelock Correctional Center ("LCC"). On March 31, 2006, the District Court adopted this court's report and recommendation that plaintiff's claims be dismissed (#53) and plaintiff appealed (#55). On May 26, 2009, the Ninth Circuit Court of Appeals affirmed in part, vacated in part, and reversed the District Court's order (#62). The circuit panel held that the court erred in dismissing plaintiff's claims concerning LCC's policies and procedures, or lack thereof, for failure to exhaust administrative remedies. *Id.* The court also held the District Court erred in finding the plaintiff presented no evidence that the defendants failed to properly train or supervise correctional officers. *Id.* On remand, the District Court was directed to decide whether the failure to train amounted to deliberate indifference. *Id.*

On October 6, 2009, this court convened a settlement conference, but the parties were unable to reach an agreement (#72). At the parties' request, the District Court extended the deadline to file the joint pretrial order three times, but set a final deadline of January 8, 2010 (#78). On January 5, 2010, three days before the joint pretrial order was due, plaintiff filed the instant motion to enforce settlement agreement (#80), and defendants filed a motion to dismiss (#79). Upon review of the papers filed concerning plaintiff's motion to enforce settlement agreement, the court set an evidentiary hearing, which was held April 1, 2010 (#105).

**II.     Factual Findings**

1. After the October 6, 2009 settlement conference, the parties continued to discuss settlement through their respective attorneys, Mr. Morris and Ms. Lee.

2. After stipulating to extend the deadline to file the joint pretrial order, counsel discussed settlement, and Ms. Lee told Mr. Morris that if they were to reach a settlement, she needed a ballpark figure to convey to her clients.

3. Mr. Morris gave Ms. Lee a figure of $25,000, but emphasized he did not have plaintiff's authority and would need to speak with his client.

4. On October 22, 2009, Ms. Lee reported this discussion to her client representative, Mr. Don Helling, and chief deputy attorney general, Steven Quinn, and they agreed the settlement amount might be worth pursuing in further discussions.

5. Ms. Lee telephoned Mr. Morris that same day and told him that if plaintiff would agree to settle the case for $25,000, the parties might be able to settle the case.

6. Mr. Morris asked Ms. Lee to send him a formal settlement agreement right away so that when Mr. Morris went to visit his client at the LCC, plaintiff could sign it without the necessity of making additional trips to the prison and also to prevent plaintiff from changing his mind about settlement, once plaintiff agreed to it.

7. On October 22, 2009, Ms. Lee sent a proposed settlement agreement and release to Mr. Morris via email, which he received. Mr. Morris made no changes to the document, and he delivered it to his client for his review and signature.

8. Ms. Lee testified that when she sent the settlement agreement to Mr. Morris, she understood that the defendants had made an offer to settle the case for $25,000.

9. Mr. Morris delivered the settlement agreement to plaintiff, and plaintiff signed it on November 21, 2009. *See* Exhibit 1 of joint exhibits for evidentiary hearing (#105).

10. Although plaintiff signed the settlement agreement on November 21, 2009, Mr. Morris did not send the agreement to Ms. Lee until December 28, 2009. Until that date, Ms. Lee did not know plaintiff had signed the agreement.

11. Sometime between November 21 and December 28, 2009, Mr. Morris and Ms. Lee had subsequent discussions about the settlement agreement, but their testimony differs as to what occurred.

12. Ms. Lee testified consistently with her declaration that Mr. Morris told her the plaintiff would agree to settle for $25,000 *if* he could purchase and keep a PlayStation in his cell.

13. Mr. Morris testified consistently with his declaration that he told Ms. Lee there was a settlement, and that while plaintiff "had the ears of people in more powerful positions," he wanted to know if he could have a PlayStation, which plaintiff would pay for himself from the settlement proceeds.

14. It is undisputed that in Section 1983 inmate litigation, settlement discussions will include negotiations for personal property items, which are highly valued in the prison environment.

15. Counsel discussed whether the NDOC would agree to allow plaintiff to have a PlayStation at LCC and whether PlayStations were authorized. Mr. Morris told Ms. Lee that his client reported to him that many inmates at LCC had PlayStations, although the administrative regulation had been revised and they are no longer on the authorized property list; however, inmates who had already purchased PlayStations were allowed to keep them.

16. Ms. Lee explained to Mr. Morris that because inmate property matters were custody and security concerns, she would have to speak with Deputy Director Don Helling, or even

3

the NDOC Director and the LCC Warden. Ms. Lee further explained that Mr. Helling would begin his annual leave the very next day and that Ms. Lee would be out of the office the week after Mr. Helling returned; therefore, she would not have an immediate response for Mr. Morris.

17. After Ms. Lee returned from her annual leave, Mr. Morris's paralegal left a voice message with Ms. Lee to ask about the status of the PlayStation.

18. Ms. Lee spoke with Mr. Helling after she returned from annual leave, and he told her that Nevada State Prison was the only NDOC institution that allowed PlayStations and that LCC had never allowed them. Ms. Lee asked Mr. Helling to speak with the NDOC Director about plaintiff's request for a PlayStation.

19. A few days later, Mr. Helling called Ms. Lee and told her that defendants were no longer interested in settling the case.

20. Ms. Lee contacted Mr. Morris's office and also left a message on his cell phone that defendants were no longer interested in settlement and that counsel needed to prepare the joint pretrial order, which was due January 8, 2010.

21. After Mr. Morris learned the defendants' position, he sent the signed agreement to Ms. Lee on December 28, 2009.

22. On that same day, counsel spoke on the telephone. Mr. Morris urged Ms. Lee to ask the defendants to reconsider and then expressed the view that notwithstanding the request for the PlayStation, the parties had a settlement agreement for $25,000, that the agreement was enforceable, and that Mr. Morris would file a motion to enforce the settlement agreement.

23. Ms. Lee replied that the parties did not have a settlement agreement, that defendants had rejected his counteroffer concerning the PlayStation, and that she would nevertheless ask defendants again if they would settle the case.

24. Thereafter, Ms. Lee conferred with her client representative who confirmed they were no longer interested in settlement.

### III. Discussion

This court has inherent authority under federal law to enforce a settlement agreement in an action pending before it. *Marks-Foreman v. Reporter Publishing Co.,* 12 F.Supp.2d 1089, 1092 (S.D.Cal.1998) (citing *In re City Equities Anaheim, Ltd.*, 22 F.3d 954, 957 (9th Cir. 1994); *Callie v. Near,* 829 F.2d 888, 890 (9th Cir. 1987); *TNT Marketing, Inc. v. Agresti*, 796 F.2d 276, 278 (9th Cir. 1986)). A settlement agreement must meet two requirements to be enforced. First, it must be a complete agreement. *Maynard v. City of San Jose,* 37 F.3d 1396, 1401 (9th Cir. 1994); *Callie,* 829 F.2d at 890 (citing *Ozyagcilar v. Davis,* 701 F.2d 306-308 (4th Cir. 1983)). Second, both parties or their authorized attorneys must agree to the terms of the settlement. *See Harrop v. Western Airlines, Inc.,* 550 F.2d 1143, 1144-45 (9th Cir. 1977). If a party gives his or her attorney express permission to enter a settlement agreement, the attorney may do so. *Id.* at 1145. Where material facts concerning the terms or existence of settlement agreement are disputed, the parties are entitled to an evidentiary hearing. *Callie,* 829 F.2d at 890.

"The construction and enforcement of settlement agreements are governed by principles of local law which apply to interpretation of contracts generally," even if the underlying cause of action is federal. *O'Neil v. Bunge Corp.,* 365 F.3d 820, 832 (9th Cir. 2004) (applying Oregon law); *United Commercial Ins. Serv. Inc. v. Paymaster Corp.,* 962 F.2d 853, 856 (9th Cir. 1992 (applying California law); *Jeff. D. v. Andrus,* 899 F.2d 753, 769 (9th Cir. 1989) (applying Idaho law); *Turnberry Pavilion Parnters, L.P. v. M.J. Dean Constr., Inc.,* No. 2:07-CV-01042-KJD-PAL, 2009 WL 905055, at *3 (D. Nev. Mar. 31, 2009) (applying Nevada law).

For a contract to be enforceable, basic contract principles require an offer and acceptance, meeting of the minds, and consideration. *May v. Anderson,* 121 Nev. 668, 672, 119 P.3d 1254, 1257 (2005). Where essential terms of a proposal are accepted with qualifications, or not at all, an agreement is not made. *Heffern v. Vernarecci,* 92 Nev. 68, 70, 544 P.2d 1197 (1976); *McCall v. Carlson,* 63 Nev. 390, 172 P.2d 171 (1946); *McCone v. Eccles*, 42 Nev. 451, 181 P. 143 (1919).

However, Nevada law makes a critical distinction between an acceptance which qualifies and/or amends essential terms and an acceptance which then makes inquiry into additional nonessential terms. The Nevada case of *Pravorne v. McLeod*, 79 Nev. 341, 383 P. 2d 855 (1963) is illustrative.

In *Pravorne*, plaintiff Pravorne and defendant McLeod negotiated the purchase and sale of real property. Pravorne, the purchaser, had his title company prepare escrow instructions. He mailed these to McLeod, the seller. McLeod did not like the instructions and therefore had his attorney draft a new set. McLeod then mailed the new instructions and a newly drafted contract to Pravorne. Pravorne signed the contract to buy the property and delivered copies to the title insurance company. The title insurance company, at the request of Pravorne's broker, included an "Amendment to Escrow Instructions," inserting a release clause on the deed of trust. McLeod refused to accept the agreement claiming that Pravorne did not unconditionally accept the offer but rather rejected the offer and made a counteroffer. The lower court ruled for McLeod on summary judgment.

On appeal, the court defined the issue in the following manner:

> whether the title company's return to the sellers of the signed contract, accompanied by the notation [of] the buyer's broker . . . constituted a conditional acceptance, in effect, a rejection of the offer and the submission of a counteroffer; or whether the signing and returning of the contract was an unconditional acceptance, resulting in a binding contract between the parties, with a request for an amendment . . . being merely a request for an additional provision for the convenience of the buyer, if approved by the seller, the buyer's acceptance of the signed contract not being dependent thereon.

*Id.* at 857.

The court held that the buyer's amendment to the agreement, which added a release clause did not affect the buyer's acceptance of the agreement. The court noted:

> We are of the opinion that when appellant signed and returned the agreement he made an unconditional acceptance which was not made to depend upon McLeod's assent to the proposed amendment, which was simply a request for an additional benefit which was not an essential term or condition of his acceptance.

*Id.* at 858. In other words, a request for an "additional benefit" that is "not an essential term or condition of [an offeree's] acceptance" will not operate as a rejection or counter offer. *See id.* ("[T]he request for amendment was merely for an additional benefit if the request should be approved and was not a rejection of the offer.")

In *Pravorne*, the court appears to examine two factors to determine whether the offeree's acts constitute a valid acceptance. First, the court looks to the timing of the offeree's acts; that is, whether

6

the request for an additional term came prior to the acknowledgment of an agreement or after the acknowledgment of an agreement. In *Pravorne*, the buyer signed his contract and sent it to the insurance company. Only after signing did the title insurance company add the amendment to the release clause.

Second, the court seems to look to the materiality of the term and whether the additional term is essential to the bargain. In other words, was the offeree's acceptance of the agreement dependent on the additional term? In *Pravorne*, the amendment dealt with delivery of plats of property upon prescribed percentages of payment. Unfortunately, the court does not offer analysis as to why the amendment in the release clause was not essential, but this court assumes, given the result in the case, that the *Pravorne* court did not find it essential.

In sum, the critical facts in analyzing an offeree's purported acceptance are (1) when and how any qualification or condition is made (i.e., whether made before or after the manifestation of assent), and (2) the nature of the offeree's request (i.e., whether request is essential to the offeree's assent or simply a request for an additional benefit).

**IV.   Analysis**

It is undisputed that counsel for the parties in this action had their respective clients' permission to negotiate a settlement. The evidence reveals that Ms. Lee transmitted the proposed settlement agreement for $25,000, which reflected their previously discussed "ballpark" estimates. Mr. Morris met with his client who signed the agreement; thus, there was a binding settlement agreement at that moment. Had the signed agreement been returned to Ms. Lee for her clients' signature, it would have constituted a complete agreement that the attorneys were authorized to make on behalf of their clients. However, Mr. Morris did not do so. Instead, Mr. Morris testified that while he had the ear of those in high places at NDOC, he asked Ms. Lee to inquire whether plaintiff could purchase a PlayStation with the settlement proceeds. The issue under *Pravorne* is whether this proposed amendment to the settlement agreement affected plaintiff's acceptance of the agreement.

*Pravorne* requires the court to consider both the timing of Mr. Morris's acts on behalf of his client and the materiality of the proposed provision. As to timing, in contrast to *Pravorne,* Mr. Morris did not return the signed settlement agreement to defendants or to Ms. Lee immediately after his client

signed it. Instead, he held the agreement from November 21st until December 28th and in the interim, asked Ms. Lee and her client to consider a new proposal that plaintiff be allowed to purchase a PlayStation with the settlement proceeds. It was only after Ms. Lee told Mr. Morris that the defendants would not consider the request and considered it a counteroffer, which they rejected, that Mr. Morris sent the signed agreement to Ms. Lee and insisted they had an agreement.

The next question is whether Mr. Morris's proposal that plaintiff be allowed to purchase a PlayStation is an essential term or simply a request for an additional benefit. Mr. Morris characterizes the request for the PlayStation as minor, but the court disagrees. The court has presided over many, many settlement conferences in Section 1983 inmate cases, and items of personal property, such as audio and video equipment, are not only considerably important to inmates; they are often the subject of contentious settlement negotiations. Possession of personal property may seem trivial to those who are not in prison, but these are very important issues to inmates. Ms. Lee's response that she would have to consult not only Mr. Helling, but also the NDOC director, Mr. Skolnik, and LCC's warden, suggests that the proposal was not a trivial matter, since it implicated property and security concerns. Mr. Morris's conduct does not support his contention that he couched the proposal in language that was merely a request for an additional benefit. If the PlayStation had not been important, Mr. Morris would have sent Ms. Lee the signed settlement agreement immediately and raised the request thereafter.

The court concludes that Mr. Morris's qualified acceptance was a new proposal or counteroffer:

> A conditional acceptance is, in effect, a statement that the offeree is willing to enter into a bargain differing in some respects from that proposed in the original offer. The conditional acceptance, is therefore, itself a counteroffer, and operates to reject the original offer, so that thereafter even a purportedly unqualified acceptance of that offer will not form a contract.

2 Williston on Contracts § 6:13 (4th ed.), *Qualified or Conditional Acceptance at Common Law.*

### V.     **Conclusion and Recommendation**

For the reasons stated above, the undersigned Magistrate Judge recommends that the District Judge enter an Order **DENYING** plaintiff's motion to enforce settlement (#80).

8

The parties should be aware of the following:

1. They may file, pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule IB 3-2 of the Local Rules of Practice, specific written objections to this Report and Recommendation within fourteen (14) days of receipt. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. This Report and Recommendation is not an appealable order, and any notice of appeal pursuant to Rule 4(a)(1), Fed. R. App. P., should not be filed until entry of the District Court's judgment.

**IT IS SO ORDERED.**

DATED: April 26, 2010.

_____
UNITED STATES MAGISTRATE JUDGE