

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

LARRY M. WISENBAKER,

Plaintiff,

v.

CRAIG FARWELL, *et al.*,

Defendants.

)
)
)
)
)
)
)
)
)
)

3:03-cv-00500-LRH-VPC

**REPORT AND RECOMMENDATION**
**OF U.S. MAGISTRATE JUDGE**

This Report and Recommendation is made to the Honorable Larry R. Hicks, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4. Before the court is defendants' motion to dismiss for failure to exhaust administrative remedies (#79). Plaintiff opposed (#90), and defendants replied (#99). For the reasons stated below, the court recommends that defendants' motion (#79) be denied.

## I. HISTORY & PROCEDURAL BACKGROUND

Plaintiff Larry Wisenbaker ("plaintiff") is currently incarcerated at Lovelock Correctional Center ("LCC") in the custody of the Nevada Department of Corrections ("NDOC") (#16). Plaintiff filed his civil rights complaint on September 11, 2003, alleging that defendants violated his constitutional rights as a result of an attack, which occurred in January 2001 (#2). Defendants answered the complaint, asserting numerous affirmative defenses, including that plaintiff failed to exhaust all available administrative remedies (#26). On July 11, 2005, defendants filed a motion to dismiss for failure to exhaust administrative remedies as well as a motion for summary judgment (#33, #34). The district court adopted and accepted the report and recommendation of the undersigned magistrate judge and dismissed all claims (#47, #54).

On April 7, 2006, plaintiff filed a notice of appeal (#55). On August 16, 2007, the Ninth Circuit Court of Appeals notified the parties that it was holding plaintiff's appeal in abeyance pending a decision in *Ngo v. Woodford*, which the United States Supreme Court had remanded (#58).

1   *See Woodford v. Ngo*, 548 U.S. 81, 84 (2006).  On September 26, 2008, the Circuit Court ordered
2   the parties to file supplemental briefs "addressing the effect of this [circuit] court's decision in *Ngo*
3   *v. Woodford*, 539 F.3d 1108 (9th Cir. 2008)" (#59).  On May 26, 2009, the Circuit Court issued its
4   memorandum decision, affirming in part, vacating in part, and remanding plaintiff's case to the
5   District Court "to determine in the first instance whether the failure to train [officers in monitoring
6   and responding to the use of the prison's intercom system] amounted to deliberate indifference"
7   (#62).

8        The court "decline[d] to reach the defendants' argument, raised for the first time on appeal,
9   that the untimeliness of [plaintiff's] grievance constitutes improper exhaustion under *Woodford v.*
10  *Ngo*, 548 U.S. 81 (2006)." *Id.*  However, on remand to this court, defendants raise the exhaustion
11  defense, arguing that plaintiff's grievances were untimely (#79).

## II.  DISCUSSION & ANALYSIS

**A.    Discussion**

   **1.    Exhaustion of Administrative Remedies**

      **a.    Prison Litigation Reform Act**

16       The Prison Litigation Reform Act of 1996 (the "PLRA") amended 42 U.S.C. § 1997e to
17  provide that "[n]o action shall be brought with respect to prison conditions under section 1983 of
18  this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional
19  facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

20       Although once within the discretion of the district court, the exhaustion of administrative
21  remedies is now mandatory. *Booth v. C.O. Churner*, 532 U.S. 731 (2001). Those remedies "need
22  not meet federal standards, nor must they be 'plain, speedy, and effective.'" *Porter v. Nussle*, 534
23  U.S. 516, 524 (2002), citing *Booth*, 532 U.S. at 739-40 n.5. Even when the prisoner seeks remedies
24  not available in the administrative proceedings, notably money damages, exhaustion is still required
25  prior to filing suit. *Booth*, 532 U.S. at 741.  Recent case law demonstrates that the Supreme Court
26  has strictly construed section 1997e(a). *Id.* at 741 n.6 ("We will not read futility or other exceptions
27  into statutory exhaustion requirements where Congress has provided otherwise").

28       Plaintiffs must properly exhaust nonjudicial remedies as a precondition to bringing suit. The

2

1    PLRA requires "proper exhaustion," meaning that the prisoner must use "all steps the agency holds

2    out, and doing so *properly* (so that the agency addresses the merits)." *Woodford v. Ngo*, 548 U.S.

3    81, 89 (2006).  Requiring exhaustion prior to filing suit furthers the congressional objectives of the

4    PLRA as set forth in *Porter v. Nussle*, 534 U.S. 516, 524-25. *See id.* at 1200

5                    **b.    NDOC Procedures**

6            "Applicable procedural rules [for proper exhaustion] are defined not by the PLRA, but by

7    the prison grievance process itself." *Jones v. Bock*, 549 U.S. 199, 218 (2007).

8            The NDOC grievance procedure is governed by Administrative Regulation 740 ("AR 740")

9    (#79, Ex. A).  Defendants submit the relevant version of AR 740 in effect at the time of plaintiff's

10   filing of hs grievance.  In order for plaintiff to exhaust available remedies at the time of his injury,

11   AR 740 required the following: (1) an informal review process; (2) a first level formal grievance

12   "specifying how and when an attempt was made to resolve the problem informally," directed to the

13   Associate Warden of Programs; (3) a second level grievance, which is decided by the Warden; (4)

14   a third level of review by the Chief of Classification and Planning; and (5) a fourth level of review

15   by the Director, applicable for grievances which challenge institutional policies and procedures. *Id.*

16   pp. 7-8.

17           From the outset, inmates were encouraged to resolve grievances informally, but the

18   regulation noted that "if this effort fails, the inmate may file a formal grievance within fifteen days."

19   *Id.* p. 7.  Upon filing of the formal grievance, AR 740 required NDOC officials to respond at each

20   level within a specified time period, beginning from the date of receipt of the grievance. *Id.* p. 3.

21                   **c.    Dismissal of Claims for Failure to Exhaust**

22           Failure to exhaust is an affirmative defense under the PLRA rather than a jurisdictional

23   requirement, and defendants bear the burden of raising and proving that the plaintiff has not

24   exhausted. *Jones v. Bock*, 549 U.S. 199, 216 (2007); *Wyatt v. Terhune*, 315 F.3d 1108, 1117 n. 9

25   (9th Cir. 2003), *cert. denied*, 540 U.S. 810 (2003).  Inmates are not required to specifically plead or

26   demonstrate exhaustion in their complaints, rather, it is the defendant's responsibility to raise the

27   issue in a responsive pleading. *Jones*, 549 U.S. at 216.

28           Failure to exhaust is treated as a matter in abatement, not going to the merits of the claim,

                                              3

1    and is properly raised in an unenumerated Rule 12(b) motion. *Wyatt*, 315 F.3d at 1119. The court

2    may look beyond the pleadings and decide disputed issues of fact without converting the motion into

3    one for summary judgment; however, "if the district court concludes that the prisoner has not

4    exhausted nonjudicial remedies, the proper remedy is dismissal of the claim without prejudice." *Id.*

5    at 1119-20, *as noted in O' Guinn v. Lovelock Corr. Ctr.*, 502 F.3d 1056, 1059 (9th Cir. 2007); *see*

6    *also, Rizta v. Int'l Longshoremen's and Warehousemen's Union*, 837 F.2d 365 (9th Cir. 1988)

7    ("[F]ailure to exhaust nonjudicial remedies should be raised in a motion to dismiss, or be treated as

8    such if raised in a motion for summary judgment.").

9    **B.**    **Analysis**

10       Defendants maintain that the motion can and should be ruled upon, but plaintiff argues (1)

11    that defendants' request exceeds the remand from the appellate court, and (2) that it is untimely

12    (#90). The court addresses these arguments below.

13       **1.**    **Rule of Mandate**

14       The Ninth Circuit Court of Appeals issued its memorandum decision on May 26, 2009, and

15    on June 17, 2009, it issued its mandate (#62, #63). In vacating the District Court's grant of summary

16    judgment, the memorandum decision provides:

17            Wisenbaker presented evidence that there were no procedures or
18            training on how to monitor or respond to the use of the prison's
              intercom system, creating a triable issue concerning whether the
              defendants properly supervised or trained officers. We remand for the
19            district court to determine in the first instance whether the failure to
              train amounted to deliberate indifference.
20

21    (#62, p. 3). Despite supplemental briefing, the appellate court did not reach the question of

22    exhaustion with respect to the timeliness of the grievance:

23            We decline to reach the defendants' argument, raised for the first time
              on appeal, that the untimeliness of Wisenbaker's grievance
              constitutes improper exhaustion under *Woodford v. Ngo*, 548 U.S. 81
24            (2006). *See Smith v. Marsh*, 194 F.3d 1045, 1052 (9th Cir. 1999)
              (explaining that, as a general rule, the court will not consider
25            arguments that are raised for the first time on appeal).

26    *Id.* at 3-4. The court finds it reasonably necessary to explain its actions in light of the Circuit Court's

27    mandate. *See, generally, Law v. Medco Research, Inc.*, 113 F.3d 781, 783 (7th Cir. 1997) ("[I]t is

28    a big help for the reviewing court to be told by the district judge how he thought his decision on

1   remand followed from the appellate court's previous ruling on the same issues in the same case.").

2       "Although lower courts are obliged to execute the terms of a mandate, they are free as to

3   anything not foreclosed by the mandate," *Herrington v. County of Sonoma*, 12 F.3d 901, 904 (9th

4   Cir. 1993) (quotations omitted). "Under certain circumstances, 'an order issued after remand may

5   deviate from the mandate . . . if it is not counter to the spirit of the circuit court's decision. . . . '" *Id.*

6   (quoting *Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400, 1404 (9th Cir.). "Although the mandate

7   of an appellate court forecloses the lower court from reconsidering matters determined in the

8   appellate court, it 'leaves to the district court any issue not expressly or impliedly disposed of on

9   appeal.'" *Nguyen v. United States*, 792 F.2d 1500, 1502 (9th Cir.1986).

10      With respect to this issue, the court grapples with what may have been "expressly or

11  impliedly disposed on appeal." *See id.* On one hand, as plaintiff argues, the appellate court

12  specifically remanded the case "for the district court to determine in the first instance whether the

13  failure to train amounted to deliberate indifference" (#62, p. 3). Although the appellate court did not

14  expressly foreclose the exhaustion defense, its instruction to "determine" a triable issue of fact and

15  the procedural stance of the issue before the appellate court (vacating the grant of summary judgment

16  and remanding for determination of a triable issue of fact) would seem to indicate that a failure to

17  exhaust should not preclude trial on this issue. In essence, plaintiff can argue that, in reaching its

18  decision on vacating and remanding, the appellate court has instructed the lower court to hear this

19  issue, thereby bypassing any previously asserted exhaustion defense. To dismiss the case on

20  exhaustion would preclude any determination of the issue and, thus, flout the appellate court's

21  mandate.

22      On the other hand, the appellate court specifically noted that it declined to reach the issue of

23  exhaustion with respect to the timeliness of plaintiff's grievance. It is difficult for this court to find

24  that the appellate considered, even impliedly, any aspect of exhaustion with respect to the remanded

25  claim when the court expressly noted that it did not reach the issue. Underscoring this reading of

26  the mandate is the rule that the lower court should look to what the appellate court considered and

27  what it did not consider, and if the appellate court did not consider an issue, it is open for the lower

28  court to address it. *See United States v. Kellington*, 217 F.3d 1084, 1093 (9th Cir. 2000) ("On

5

1  remand, courts are often confronted with issues that were never considered by the remanding court.

2  . . . In such cases, "[b]roadly speaking, mandates require respect for what the higher court decided,

3  not for what it did not decide." (quoting *Biggins v. Hazen Paper Co.*, 111 F.3d 205, 209 (1st Cir.

4  1997))). This would strongly suggest that the court is free to consider the issue.

5      The court finds that the mandate does not preclude it from considering defendants'

6  exhaustion argument. It appears that in expressly declining to reach the issue, the appellate court has

7  left it for the lower court to consider. The appellate court did not indicate that defendants had

8  waived the defense by not raising it below; the appellate court simply noted that it would not

9  consider the issue because it was raised for the first time on appeal. *See* #62, pp. 3-4. Therefore, the

10  court finds that it has the authority to address the issue. Since the PLRA requires that every prisoner

11  must exhaust every claim and do so "properly," the court proceeds to address the motion. *See*

12  *Woodford*, 548 U.S. at 84.

13      **2.    Timing of the Motion**

14      Plaintiff argues that defendants' motion is untimely (#90, p. 3). Defendants contend that the

15  motion is not untimely because the Supreme Court in *Woodford* and the circuit court's subsequent

16  decision on remand, introduced new a new legal basis on which to assert the exhaustion defense that

17  was previously unavailable.

18      Prior to *Woodford*, objection to a prisoner's untimely filing of a grievance was not available

19  in this circuit. *See Ngo v. Woodford*, 403 F.3d 620, (9th Cir. 2005) (holding that prisoner's time-

20  barred administrative appeal which resulted in no further level of appeal constituted exhaustion of

21  administrative remedies). The Third, Seventh, and Tenth Circuits had held that untimely grievances

22  did not constitute exhaustion, but the court finds it unreasonable to charge defendants with raising

23  a legal argument that was soundly rejected in this circuit.

24      Defendants are correct in their assertion that *Woodford* broadened their legal basis on which

25  to assert the defense. During the appeal and at the request of the appellate court, defendants asserted

26  the defense in supplementary briefs, yet the appellate court declined to reach the issue (#60, #62).

27  Thus, the availability of the defense only appeared with the issuance of the mandate on June 17,

28  2009. *See* Fed. R. App. P. 41(c) (effective date of mandate is the date of issue). Since defendants

6

1   had even briefed the issue before the appellate court, why defendants did not raise the issue shortly

2   after June 17, 2009, remains a mystery.[1]  Nevertheless, defendants raised their motion on January

3   5, 2010, less than six months after the mandate of the appellate court but three days prior to the

4   court's order for submission of a pretrial order.[2]

5       Federal Rule of Civil Procedure 12(b) "requires that every defense to a claim for relief must

6   be asserted in the responsive pleading if one is required." Indeed, defendants asserted the exhaustion

7   defense in their answer. *See* #26, p. 5. Thus, the issue is whether defendants' assertion that plaintiff

8   did not "properly exhaust" his claim six months after this court regained jurisdiction over the case

9   constitutes undue delay amounting to waiver of the defense.  The failure to exhaust remedies has

10  been viewed as one of the Rule 12(b) defenses that can be waived. *See Wyatt*, 315 F.3d at 1117-18

11  n.9.  However, this court does not find that the delay in this case constitutes waiver of the defense.

12  Plaintiff was on notice of defendants' use of the defense from the answer as well as the Circuit

13  Court's request for supplementary briefing the issue. In the context of other Rule 12 defenses, courts

14  have found the defense waived only in circumstances of extensive delay. *Cf. Hamilton v. Atlas

15  Turner*, 197 F.3d 58, 62 (2d Cir. 1999) (holding that defendant had forfeited its personal jurisdiction

16  defense, which was raised in its answer, by withholding it for three years and only raising it on the

17  eve of trial); *Trustees of Central Laborers' Welfare Fund v. Lowery*, 924 F.2d 731 (7th Cir.1991)

18  (holding that defendants had waived its objections to service where defense was raised six years after

19  judgment).

20      Therefore, the court finds that the motion is timely and proceeds to rule upon it.

21

22  [1]     Although defendants make no mention of it, the court notes that the parties appear to have been engaged in settlement negotiations throughout this time.

23  [2]     Both parties stipulated to extend submission of a joint pretrial order on two occasions (#74,

24  #76). One day after the deadline for submission of the joint pretrial order, defendants submitted a third motion to extend time to submit a joint pretrial order (#77).  Citing inclement weather and lack of training

25  in how to e-file documents, defendants "beg[ged] the Court's indulgence and request[ed] that under the circumstances they not be penalized for this Motion one day past the due date."  The court granted an

26  extension (#78). In their reply to this motion, defendants note that plaintiff filed his opposition one day late (#99, p. 2 n. 2). Defendants "leave it to the Court's discretion as what, if any, sanction should be imposed,"

27  yet they stress that, they bring it to the Court's attention "in order to preserve the record." *Id.*  In light of both parties negligence in failing to meet deadlines, the court does not feel that plaintiff's failure to meet the

28  deadline in this instance is conduct worthy of sanction.

1        **3.      Plaintiff's Exhaustion of Remedies**

2        *Woodford v. Ngo*, 548 U.S. 81 (2006), held that a prisoner must exhaust all available

3   administrative remedies and must do so "properly." However, the holding in *Woodford* does not end

4   this court's inquiry but begins it. The instant motion requests that this court dismiss plaintiff's claim

5   for failure to "properly" exhaust, and the court must decide whether plaintiff has "properly"

6   exhausted. Defendants point to the late filing of plaintiff's first formal grievance as well as his

7   failure to state "how and when an attempt was made to resolve the problem informally," and assert

8   that plaintiff failed to comply with procedural rules under AR 740. The District Court of Nevada

9   addressed this same issue in *Jones v. Stewart*, 457 F. Supp. 2d 1131 (D. Nev. 2006). In that case,

10  Judge Reed explained what constitutes "proper" exhaustion in light of the Supreme Court's decision

11  in *Woodford*. After a thorough review of cases applying *Woodford*, the court finds Judge Reed's

12  reasoning most persuasive and, thus, follows it. The court quotes from the amended order below:

13              The Supreme Court defines proper exhaustion as "using all steps that
                the agency holds out, and doing so *properly* (so that the agency
14              addresses the issues on the merits)." 126 S.Ct. at 2385 (quoting *Pozo
                v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir.2002)) (emphasis in
15              original). The Court goes on to state, "Proper exhaustion demands
                compliance with an agency's deadlines and other critical procedural
16              rules because no adjudicative system can function effectively without
                imposing some orderly structure on the course of its proceedings."
17              *Id.* We read Justice Alito's majority opinion in *Woodford* as setting
                forth two tests for "proper exhaustion." The "merits test" is satisfied
18              when a plaintiff's grievance is fully addressed on the merits by the
                administrative agency and appealed through all the agency's levels.
19              The "compliance test" is satisfied when a plaintiff complies with all
                "critical procedural rules," including agency deadlines. A finding that
20              a plaintiff has met either test is sufficient for finding "proper
                exhaustion." Defendants must show that Plaintiff failed to meet both
21              the merits and compliance tests to succeed in a motion to dismiss for
                failure to exhaust administrative remedies.
22
    *Jones*, 457 F. Supp. 2d at 1134. In *Jones*, prison officials argued that they need only demonstrate
23
    that plaintiff failed to comply with procedural timelines in order to warrant dismissal, to which the
24
    court responded:
25
                Such a reading treats timeliness of grievances rather than proper
26              exhaustion as the touchstone of *Woodford*. We believe that this is not
                the reading intended by the Court in *Woodford* and does not further
27              the policy objectives of the PLRA's exhaustion requirement.

28  *Id.* Judge Reed further reasoned as to why the "compliance" and "merits" tests serve the policy

                                                    8

1    interests of exhaustion noted in *Woodford*:

2        The policy considerations set forth in *Woodford* guide our reading of
     the tests and the relationship between them.  According to the
3    majority opinion, the overarching goal behind requiring exhaustion
     is encouraging inmates to use prison grievance procedures.  *Id.* at
4    2385, 2387-89.  The proper exhaustion requirement generally serves
     two purposes: protecting administrative agency authority and
5    promoting efficiency.  *Id.* at 2385.  We hold that, in light of these
     policy concerns, the merits and compliance tests are independent, not
6    cumulative.  Satisfaction of either test is sufficient for a finding of
     proper exhaustion, and a defendant must show failure to meet both
7    tests to succeed on a motion to dismiss for failure to exhaust
     administrative remedies. . . .

8
         The goal of protecting administrative agency authority is served by
9    requiring [a plaintiff] to meet either the merits test or the compliance
     test. If a plaintiff only satisfies the merits test[,] . . . administrative
10   agency authority is still protected.  The merits test treats
     administrative agency actions as determining whether administrative
11   remedies were properly exhausted.  The body of critical procedural
     rules to which inmates must adhere is determined first under the
12   merits test by the prison system, which decides when procedural
     defects bar grievances from being heard on the merits. It is only once
13   the agency treats a rule as critical (that is, by denying claims on the
     basis of a procedural defect) that the court will determine whether the
14   rule is in fact critical under the compliance test.  In contrast, requiring
     satisfaction of the compliance test as well as the merits test for proper
15   exhaustion would second guess the agency by determining that one
     of the agency's procedural rules is critical despite the agency's
16   determination that violation of the rule does not warrant dismissal of
     a grievance.

17
         Requiring a defendant to show failure to meet both tests leaves
18   agencies a wider breadth of agency authority.  If a plaintiff meets the
     merits test by having his grievance and appeals addressed on the
19   merits, then the agency has determined whether the plaintiff
     exhausted the administrative agency's dispute resolution procedures
20   to the agency's satisfaction. If the agency does not address the
     grievance or appeals on the merits, only then will the court move on
21   to determine whether the inmate nonetheless exhausted available
     remedies by complying with all critical procedural rules, such as
22   deadlines. It is only if an agency refuses to address a claim despite an
     inmate's complete compliance with all critical procedural rules, such
23   as deadlines, that agency action would not be determinative.

24       Likewise, the efficiency goal is served by requiring a defendant to
     show a plaintiff failed to meet both the merits and compliance tests
25   before dismissal of the claim. . . . Regardless of any procedural
     defects, grievances heard on the merits by an agency are addressed by
26   the agency's quicker and more economical dispute resolution
     procedures as intended by the PLRA.  Furthermore, having an
27   untimely grievance addressed on the merits in the administrative
     agency's grievance system is just as likely to convince a complainant
28   not to pursue the matter in federal court as having a timely grievance

1      addressed on the merits would be. Lastly, an administrative record is
2      still generated when the agency hears the grievance and appeals on
       the merits.

3    *Id.*

4          Here, defendants answered all levels of plaintiff's grievances notwithstanding his failure to

5    meet the procedural rules. As explained in *Jones*, the NDOC addressed the grievance on the merits

6    and did not dismiss plaintiff's grievance on any critical procedural rules. Plaintiff's grievance was

7    filed on November 26, 2002, almost two years after the incident. Defendants assert that plaintiff had

8    fifteen days from the date of his attack to file a grievance.[3]   Defendants also argue that plaintiff

9    failed to comply with the portion of the regulation which requires him to specify how and when he

10   attempted to resolve the matter informally. Assuming for the sake of argument that plaintiff wholly

11   failed to comply with the procedural rules of AR 740, evidence remains that NDOC officials fully

12   reviewed plaintiff's grievances on the merits and responded accordingly. This stands in sharp

13   contrast to the prison official in Woodford who denied the prisoner's grievance solely on the

14   procedural ground of untimeliness. In their first motion to dismiss, defendants submitted the

15   affidavit of Rosemary Seals, Associate Warden of Programs at LLC, who attested to plaintiff's

16   completion of the grievance process. Ms. Seals affidavit reads:

17         Inmate Larry M. Wisenbaker #64320 first filed an Inmate Grievance
           regarding the January 2001 incident on November 26, 2002. It was
18         assigned Log # 1341-121602. It progressed . . . the four levels of the
           inmate grievance process and was returned to him as being completed
19         [by] way a Memorandum to him dated March 25, 2003.

20   #8, Ex. A. Notwithstanding the numerous "requirements" of AR 740, prison officials "completed"

21   the grievance process. It is clear that the procedural rules on which defendants rely in the instant

22

23   ───────────────────

24         [3]      Far from a model of clarity, AR 740, as it existed at the time of plaintiff's injury, fails to set
     forth the applicable time limits for filing grievances. The regulation states that an inmate is "expected to
25   resolve the grievance informally," and "[i]f this effort fails, the inmate *may* file a formal grievance within
     fifteen (15) days of the alleged incident" (#79, Ex. A) (emphasis added). The language of the regulation
26   suggests that filing a formal grievance within fifteen days of the incident is permitted but not required.
     Defendants submit a subsequent version of AR 740 which uses mandatory language. It provides, "The
27   inmate *must* file an informal grievance within the time frames noted below . . . If the issue involves personal
     property damage or loss, personal injury, medical claims or any other tort claims, within six calendar
28   months." *Id.* Ex C. In light of the ambiguity of the regulation, the court is hesitant to conclude as a matter
     of law that plaintiff did not comply with it.

1    motion played no role in the prison's failure to resolve the issue.  Nor did plaintiff's noncompliance

2    hinder their abilities to address plaintiff's grievances.  Prison officials fully reviewed the merits of

3    plaintiff's grievances and rendered their decision prior to the plaintiff filing suit.

4         Because plaintiff's grievance was fully addressed on the merits, the court finds that plaintiff

5    properly exhausted available administrative remedies.

6                                    **III. CONCLUSION**

7         Based on the foregoing and for good cause appearing, the court concludes that defendant's

8    motion to dismiss for failure to exhaust (#79) should be **DENIED**.

9         The parties are advised:

10        1.    Pursuant to 28 U.S.C.  § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice,

11   the parties may file specific written objections to this report and recommendation within fourteen

12   days of receipt.  These objections should be entitled "Objections to Magistrate Judge's Report and

13   Recommendation" and should be accompanied by points and authorities for consideration by the

14   District Court.

15        2.    This report and recommendation is not an appealable order and any notice of appeal

16   pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

17                                   **IV. RECOMMENDATION**

18        **IT IS THEREFORE RECOMMENDED** that defendant's motion to dismiss (#79) be

19   **DENIED**.

20        **DATED:** June __7__, 2010.

21

22

                                         UNITED STATES MAGISTRATE JUDGE
23

24

25

26

27

28

                                              11